If, therefore, this offense never hath been felony before the passing of the Act of Assembly upon which the prisoner is indicted, it follows that it is not felony unless done under all the circumstances specified in the act, and annexed to it, as forming a part of the crime; one of these is omitted in the indictment. The Judges of a free country are emphatically bound to decide upon penal laws, especially those of the capital kind, according to the letter. They may, perhaps, regulate the construction by the spirit, where the letter comprehends a case manifestly not within the meaning of the Legislature; but they will never extend the act by construction to make a case punishable under it, which the letter does not reach. Upon the strict adherence to this rule, every citizen must depend for his safety, and for the protection of his life against any attempt to deprive him of it, founded on the pretense that he has offended against the meaning of a penal law. If, in case of this kind, constructions are to be allowed, the consequences to the community will be of the most dangerous kind. The caution (170) which has been heretofore observed on such occasions, is evidenced by various authorities. Thus, where the statute of 3 H. 7, c. 2, enacted, "That if any person take for lucre any woman, etc., and afterwards she be married to such misdoer, etc., he shall be capitally punished." Here, although the taking for lucre does not seem to be such a circumstance as *Page 152 
would enhance the offense, yet it must be state in the indictment, because such are the words of the statute. 4 Bl. Com., 208. So if a statute enacts that those who are convicted of stealing horses shall be capitally punished, yet he shall not be thus punished, who is guilty of stealing but one horse. 1 Bl. Com., 88. The same principle has been applied to the Stat. of 14 Geo., 2, cap. 6, by which stealing sheep or other cattle was made felony without benefit of clergy. The words "other cattle" were considered too loose to create capital offense. 1 Bl. Com., 88.
Then to apply this reasoning to the Act of Assembly, the word "steal" must be connected with and govern the words "slave or slaves, the property of another," as much so as the words take or convey away; otherwise the fact of stealing, no matter what, will be a capital felony. Then, as the words "with an intention to sell or dispose of to another," etc., immediately follow in continuation of the same sentence, before any new subject is taken up, and without any disjunctive particle, they are, by the rules of syntax, concomitant to them; equally, there governed by the verb "steal." as where governed by the verbs "take and convey away." Thus reddendo singula singulis. the act stands thus: "that any person or persons who shall hereafter steal any slave or slaves, the property of another, with intention to sell or dispose of to another, or appropriate to their own use such slave or slaves; and that any person or persons who shall by violence," etc. Hence, the crime defined and created by the act is stealing a slave with the intention to sell or dispose of to another, or to appropriate to his own use. These words, marking the intention, being omitted in the indictment, the prisoner is found guilty of an offense altogether different from that which the act of (171) Assembly seeks to repress by such severe sanctions; wherefore they concluded the judgment ought to be arrested.
There is no rule of the common law which expressly decides that the stealing of a slave is larceny; but there is a rule which declares that the stealing of the personal chattels of another, with a felonious intent, is larceny; and a slave is the personal chattel of his owner. This rule consequently extends its protection to every species of personal property, though not admitted and known as a subject of property when the law was formed.
With respect to the act of the Assembly, it was passed in turbulent times, when a practice prevailed of carrying slaves away, under the pretense that they belonged to the public, as confiscated, or that they were owned by disaffected persons or the like; they were sometimes carried off privately and by stealth, at other times openly and by violence; the former *Page 153 
case is embraced by the word steal; the words next following repress the mischief of carrying slaves away by open force, or by persuasion, or by any other means than by stealth, accompanied, nevertheless, with an intention to appropriate to the taker's own use. The word "steal" does not include,ex vi termini, an intention to appropriate to his own use, or to sell and dispose of to another; and, therefore, the intention expressed in the act, if applied to the crime of stealing, is useless and redundant. But the other modes of taking away slaves, enumerated in the act, do not necessarily import the intention of selling them, or of appropriating them to their own use; nor are they, when unaccompanied by such intention, so detrimental or injurious. Of these offenses, the intention forms a principal ingredient, and to them the words must be exclusively referred. I am consequently of opinion that the judgment ought not to be arrested.